The Honorable Sue Madison State Representative 573 Rock Cliff Road Fayetteville, AR 72701-3809
Dear Representative Madison:
This is in response to your request for an opinion on four questions concerning Act 707 of 1997 and election procedures in a city of the first class that has attained a population of 50,000. Your questions are restated and addressed below.
Question 1 — Will Act 707 of 1997 operate to extend the present term ofoffice of some municipal officials, including mayors?
In my opinion, it is possible, depending upon the particular facts and circumstances, that Act 707 will operate to extend the present term of office of some municipal officials, including mayors.
Arkansas Code Annotated § 14-43-303 (enacted in 1959) sets forth the relevant times of election and the terms of office of various city officials and applies to cities of the first class with the mayor-council form of government and a population of 50,000 or more. See Op. Att'y Gen. 97-040. Section 14-43-303(a)(1) provides that the mayor, city clerk, and one alderman from each ward of the city shall be elected at the general election in the year 1960, and every four years thereafter. Section 14-43-303(a)(3) provides that the city attorney, city treasurer, municipal judge, and one alderman from each ward of the city shall be elected at the general election in the year 1962, and every four years thereafter.[1]
Act 707 amends § 14-43-303 by adding a subdivision (d) which provides in part:
 If a city first attains a population of 50,000 as shown in a Decennial federal census or special federal census completed after January 1, 1997, and the mayor or other elected official of such city last elected before the census was elected to a four-year term and such term will expire two (2) years before the quadrennial general election year at which city officials are elected as provided in subsection (a) of this section, the terms of such officials shall be extended for a period of two (2) years in order that the terms will coincide with the next quadrennial general election year. At that quadrennial general election and at each quadrennial general election thereafter, the mayor and such other municipal officials shall be elected to terms of four (4) years as provided in this section.
Further, section one of Act 707 provides in part:
 It is further found and determined by the General Assembly that one or more cities in the State will first attain a population of 50,000 soon after January 1, 1997; that the mayor and some other officials of such city or cities were elected to terms of four (4) years at the 1994 general election and their terms will expire at the end of 1998; that under the current law relating to election of the mayor and some other city officials in cities having a population of 50,000 or more such officials are required to be elected to four-year terms at the quadrennial general election which means that there will be a two-year period between the normal expiration of their current terms and the quadrennial general election at which the officers are required by current law to be elected for four-year terms; that this situation may occur repeatedly in the future as new cities attain a population of 50,000; that the primary options are to either extend the terms by two (2) years in order that the terms will expire at the appropriate time to be filled at the next quadrennial general election or to reduce the four-year terms immediately before the quadrennial election year to two (2) years; that it appears more equitable to extend the four-year terms to six-year terms than to cut terms short to accommodate the election schedule prescribed in Arkansas Code 14-43-303(a). It is therefore the intent and purpose of this act to provide for the extension of such terms of office to accommodate the election schedule currently provided by law for such offices.
Based upon the above provisions, it is clear that the legislature intended to provide for the one-time extension of certain terms of office from four years to six years.
It is also my opinion that pursuant to Act 707 if a city of the first class with a mayor-council form of government first attains a population of 50,000 before the terms of its current mayor and city clerk expire, then the present term of that mayor and city clerk shall be extended by two years. The mayor and city clerk in a city of the first class with the mayor-council form of government and a population of less than 50,000 were elected to four year terms in 1994. See A.C.A. §§ 14-43-305 and14-43-316 (1987). Under § 14-43-303, the elections for mayor and city clerk are to be held in the year 2000. Thus, pursuant to Act 707, the present terms of the mayor and city clerk would be extended by two years.[2]
Question 2 — Does the General Assembly have the authority to extend thepresent term of municipal elected officials?
In my opinion, the answer to this question is "yes." Section 14-43-303
was originally enacted by Act 176 of 1959. In addition to specifying the officials that were to be elected at the 1960 and 1962 general elections, Act 176 abolished all odd-year elections for municipal officials in cities of the first class with the mayor-council form of government and a population of 50,000 or more. Act 176 further provided that "any municipal official or municipal judge whose term shall expire at such times as would have heretofore required an election in an odd year shall be elected at the next general election in the even year." InLovell v. Democratic Central Committee, 230 Ark. 811, 327 S.W.2d 387
(1959), the Arkansas Supreme Court upheld this extension of terms.
In Lovell, the appellants complained that the abolition of the 1959 municipal elections would result in extending until 1960 the terms of those officers who were elected in 1957. The court noted that the change from two-year terms to four-year terms and from annual elections to biennial elections could hardly be accomplished without either extending some of the terms for a year or reducing some of them by a year. The court concluded that the legislature's choice clearly fell within the rule that a reasonable change in the beginning of terms, as an incident to a change in the date of elections, is not forbidden by the constitution. Similarly, in Act 707 the legislature concluded that it was more equitable to extend the four-year terms to six-year terms than to cut terms short to accommodate the election schedule prescribed in A.C.A. § 14-43-303(a).
Question 3 — What is the procedure for staggering the terms of thealdermen at the first election after reaching 50,000 population? Thatis, will lots be drawn after the election or will the shortened terms bedesignated before the election?
I can find no statutory provision regarding the procedure for staggering the terms of the aldermen in this situation; therefore, I cannot provide a complete answer to your question. In the absence of an express statutory provision, it is my opinion that this matter is generally within the city's authority to exercise powers relating to "municipal affairs." See A.C.A. § 14-43-601 and -602.[3]
Act 176 of 1959 provided that at the general election in the year 1960 one alderman from each ward of the city was to be elected to a four year term and one alderman from each ward of the city was to be elected to a two year term. At the general election in 1962, aldermen were to be elected to four year terms. As a result, the terms of the aldermen became staggered so that one alderman will be elected from each ward every two years. Act 707 expressly provides that the provisions of subdivision (d) shall not affect the requirement that the terms of the aldermen be staggered so that one alderman will be elected from each ward every two years. Neither Act 176 nor Act 707, however, provide a method for staggering the terms of the aldermen when a city subsequently reaches a population of 50,000.[4] Thus, while a conclusive resolution will probably require either legislative clarification or a judicial ruling, I believe this matter is generally within the city's authority to exercise powers relating to "municipal affairs."
Question 4 — Prior to Act 707 how did an increase in population to 50,000affect municipal elections?
In Lovell, supra, the court upheld Act 176 which extended the terms of those municipal officials who were elected in 1957. In addition, Act 176 specified the terms of office for those officials that were elected at the general elections in 1960 and 1962. Nevertheless, prior to Act 707, §14-43-303 did not expressly provide how a city that subsequently attained a population of 50,000 should conform to the election procedures set out in § 14-43-303. I have found no reported decisions of the Arkansas Supreme Court or the Arkansas Court of Appeals regarding this matter.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Under A.C.A. § 14-43-405 (1987) (enacted in 1965), all cities of the first class having the mayor-council form of government may provide, by ordinance, for the election or appointment of their city treasurer.See generally Op. Att'y Gen. 96-264.
[2] It is also possible that the present term of the municipal judge might be extended pursuant to Act 707. The municipal judge is elected for a four year term; however, municipal ordinances should be consulted to determine whether the current election schedule is consistent with the schedule prescribed in § 14-43-303. See A.C.A. § 16-17-207 (Repl. 1994). With regard to the city attorney, the election schedule for a city attorney in a city of the first class with the mayor-council form of government and a population of less than 50,000 is identical to the election schedule prescribed in § 14-43-303. See A.C.A. §§ 14-43-314 and14-43-315. Finally, the aldermen in a city of the first class with the mayor-council form of government and a population of less than 50,000 are elected for two year terms, see A.C.A. § 14-43-312 (1987); therefore, Act 707 is not applicable.
[3] Cities of the first class may "perform any function and exercise full legislative power in any and all matters of whatsoever nature pertaining to its municipal affairs." A.C.A. § 14-43-602 (1987). "Municipal affairs" are "all matters and affairs of government germane to, affecting, or concerning the municipality or its government [except the enumerated `state affairs']. . . ." A.C.A. § 14-43-601(a)(1) (1987).
[4] Although Act 176 might appear to indicate a legislative preference for electing one alderman to a two year term and one alderman to a four year term, A.C.A. § 14-47-107(g)(2)(B)(ii) (1987) provides that when a city changes from the city manager form of government to the aldermanic form, if the terms of the alderman are to be staggered, "determination shall be made by lot and the length of the terms fixed accordingly." Thus, determination by lot and the designation of two-year and four-year terms prior to the election both appear to be acceptable methods for staggering the terms.